IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 3:24-cr-00011-LMM |
| TRAVIS LAMAR GORDON, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

This matter is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R"), Dkt. No. [36], recommending denial of Defendant Travis Lamar Gordon's motion to suppress, Dkt. No. [15]. Defendant has filed objections to the R&R. Dkt. No. [39]. After due consideration, the Court **OVERRULES** the objections, **ADOPTS** the R&R, and **SETS** this case for trial.

**I.   BACKGROUND**

In August 2024, a federal grand jury charged Defendant with one count of knowingly possessing a firearm while being an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5), and one count of unlawful possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Dkt. No. [1]. Defendant moved to suppress evidence obtained during a traffic stop prior to his arrest. Dkt. No. [15]. Following two evidentiary hearings, see Dkt. Nos. [19, 31], the Magistrate Judge recommended denying Defendant's

motion, Dkt. No. [36]. The Magistrate Judge based his decision on the following facts from the evidentiary hearings. See id. at 2-5.[1]

On June 3, 2024, Sergeant William Faulkner of the Coweta County Sheriff's Office conducted a traffic stop of a black Ford Expedition after observing the vehicle following another vehicle too closely as it traveled south in the middle lane of Interstate 85. Dkt. No. [23] at 5-8, 33, 35. Defendant, the driver of the vehicle, initially indicated it was his vehicle, but after Sergeant Faulkner asked for insurance and registration for the vehicle, which had a Georgia dealer tag, Defendant stated it was a dealership vehicle from a dealership in Atlanta. Id. at 12-13. Sergeant Faulkner asked Defendant how long he had the vehicle and how much he wanted to sell it for, and Defendant indicated that he had the vehicle for three months and wanted to sell it for $20,000. Id. at 13. Sergeant Faulkner testified that the price raised a red flag that the vehicle might be stolen because the vehicle was "easily a $40,000 car[.]" Id. Sergeant Faulkner then asked Defendant to step out of the vehicle and stand behind the car, and after Defendant indicated that he did not have any weapons, Sergeant Faulkner took a photo of the vehicle identification number ("VIN") on the dashboard and the doorframe to run the number. Id. at 14-15.

---

[1] Defendant does not object to the Magistrate Judge's factual findings, and the Court finds no clear error in them. Accordingly, the Court adopts the background section of the R&R and includes it below. Unless otherwise noted, this Order cites all page numbers from the record as they appear on the Adobe file reader linked to the Court's electronic filing system.

Sergeant Faulkner testified that he noticed that the tire size and vehicle year on the VIN sticker were not correct for the vehicle, that the font on the VIN sticker did not appear to be valid, and that when he ran the purported VIN for the vehicle, there was "nothing on file in any state." Id. at 15-17. When Sergeant Faulkner returned to the vehicle to find the actual VIN, he discovered that the VIN sticker on the doorframe was peeling off, which indicated that it was not a legitimate sticker. Id. at 18-19. Sergeant Faulkner plugged a scanner into a port below the steering wheel to access the vehicle's information, and the VIN came back to a car reported stolen in 2023. Id. at 19-20, 22, 38. With Defendant's permission, Sergeant Faulkner searched the vehicle and seized five cell phones, a notebook, and four bank cards that did not have Defendant's name on them. Id. at 24-27. Defendant was not placed under arrest, and Sergeant Faulkner had a patrol officer drive him home. Id. at 25-26, 38. The Coweta County Sheriff's Office took possession of the vehicle. Id. at 25-26.

Sergeant Faulkner testified that an investigator at the Coweta County Sheriff's Office was assigned to the case and was responsible for obtaining any search warrants. Dkt. No. [32] at 6-7. Special Agent Trenton Benson was assigned to the case as the investigator on June 4, 2024, id. at 7, 20-22, and Sergeant Faulkner completed his report regarding the traffic stop on June 6, 2024, id. at 8. Sergeant Faulkner testified that the sheriff's office has only two devices to extract cell phone information, a Cellebrite device and a GrayKey device, but the

GrayKey device was primarily used for "rape cases or very severe crimes" due to the cost associated with using this device, and regardless, "[w]ith those devices, [they are] only able to do one cell phone at a time," which, depending on the cell phone and how much data was on the device, "could take days to do the extraction on them." Id. at 7-8. He testified that at any given time, the sheriff's office had 10 to 45 phones a month waiting to be searched, and because a state search warrant must be executed within 10 days, the sheriff's office normally would apply for 3 to 4 search warrants at a time. Id. at 9-10. Sergeant Faulkner explained that the cell phones were normally extracted in the order that they were seized, but if there was a more severe crime, those cell phones or other electronic devices would typically be extracted first. Id. at 11, 19.

Agent Benson also testified that at the time of the seizure of the phones from Defendant's vehicle, the sheriff's office had "a pretty extensive backlog of cell phones that need[ed] search warrants";[2] that they did not "immediately get a search warrant on each phone because [they did not] want those phones sitting there with search warrants and then have to turn the search warrant back in and apply for another one due to having ten days to . . . execute"; that they extracted "one phone at a time," and "depending on what's on [the phones], they [could] take a couple of days, up to five days to complete one phone"; and that he

---

[2] Sergeant Faulkner estimated that there were about 20 phones awaiting extraction in June 2024 when Defendant's phones were seized. Dkt. No. [32] at 9-10.

checked on the status of the cell phones to be extracted "two to three times a week." Id. at 22-23, 28. On July 1, 2024, Agent Benson obtained a search warrant for the cell phones seized during the traffic stop. Dkt. No. [23] at 28; Dkt. No. [21-1]; Dkt. No. [32] at 26.

Defendant moved to suppress all evidence seized by law enforcement during the June 3, 2024 traffic stop, arguing that law enforcement violated his Fourth and Fourteenth Amendment rights by seizing his person and vehicle during the traffic stop and seizing his cell phones without a warrant. Dkt. No. [15] at 1-4. Defendant also challenged the delay between the seizure of his phones and the application for the search warrant, arguing that the delay was unreasonable and deprived him of his possessory interest in the phones protected by the Fourth Amendment. Dkt. No. [27] at 8-10. The Magistrate Judge disagreed and recommended denying Defendant's motion. Dkt. No. [36]. Specifically, the Magistrate Judge concluded that Sergeant Faulkner had sufficient probable cause to believe that Defendant had committed the traffic infraction giving rise to the stop; that the plain view doctrine permitted the seizure of Defendant's cell phones; and that the delay between the seizure of Defendant's cell phones and the application for a search warrant was not unreasonable and did not deprive him of his possessory interest. Id. at 8-26. Defendant timely objected to the R&R, Dkt. No. [39], and the Government filed no response. The R&R is now ripe for review.

**II.   DISCUSSION**

Under 28 U.S.C. § 636, the Court reviews a Magistrate Judge's R&R for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files objections, however, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id. Defendant objects to the R&R on three grounds. First, he contends that the Magistrate Judge erred in finding the traffic stop unlawful because he failed to consider Sergeant Faulkner's subjective intent and motives when evaluating the credibility of his testimony. Dkt. No. [39] at 1-4. Second, he argues that the plain view exception did not provide a sufficient basis for seizing his cell phones. Id. at 4-5. Third, he maintains that the Magistrate Judge failed to address multiple factors in evaluating law enforcement's delay in obtaining search warrants for Defendant's cell phones. Id. at 5-8. Having reviewed de novo the portions of the R&R to which Defendant objects, the Court finds Defendant's objections unpersuasive.

**A.   Probable Cause for the Traffic Stop**

First, Defendant argues that the traffic stop (i.e., the seizure of his person) was not supported by probable cause. Dkt. No. [39] at 1-4. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop for a suspected violation of law is considered a seizure of the vehicle's occupant and must be conducted in accordance with the

Fourth Amendment. Heien v. North Carolina, 574 U.S. 54, 60 (2014). A traffic stop is reasonable, and therefore constitutional, if the officer conducting the stop has probable cause to believe that a traffic violation has occurred. United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008).

The Magistrate Judge found that the traffic stop was supported by sufficient probable cause based on Sergeant Faulkner's testimony that he observed Defendant following another vehicle too closely, in violation of O.C.G.A. § 40-6-49. Dkt. No. [36] at 11-12. In evaluating the testimony, the Magistrate Judge did not consider Sergeant Faulkner's subjective intentions and motives for making the traffic stop because they are "irrelevant where the officer has probable cause for the stop." Id. at 9. Citing no authority, Defendant argues that subjective intent and motives *are* relevant when determining the credibility of an officer's testimony. Dkt. No. [39] at 3. According to Defendant, Sergeant Faulker "created a traffic violation" so that he could justify the stop for pretextual reasons—because he suspected that the car might have been stolen. Id. at 3. As evidence, Defendant points to the fact that Sergeant Faulkner waited to initiate his dash camera until just before the stop, after the violation had occurred. Id.

Defendant's position has been squarely and repeatedly rejected by the Supreme Court and lower courts. "It is well-settled that an officer's subjective motivations do not affect whether probable cause exist[s]" to initiate a traffic stop. Miller v. Harget, 458 F.3d 1251, 1260 (11th Cir. 2006); accord Whren v.

7

United States, 517 U.S. 806, 813 (1996) (concluding that subjective motivations are irrelevant with regard to the validity of a traffic stop); Durruthy v. Pastor, 351 F.3d 1080, 1088 n.5 (11th Cir. 2003) ("There is no question that an officer's subjective intent is immaterial when there is an objectively reasonable basis for believing that an offense has occurred."). Thus, the Magistrate Judge correctly concluded that "once Seargeant Faulkner witnessed a violation of the state's traffic laws, his stop of Gordon's vehicle was appropriate regardless of any pretextual motivations." Dkt. No. [36] at 15 (cleaned up).

Moreover, Defendant's argument that Sergeant Faulkner's testimony is not credible because it was unsupported by dash camera footage is unpersuasive. Sergeant Faulkner testified that he did not activate his dash camera in time to capture the traffic infraction because he was trying to merge safely onto the highway to initiate the traffic stop. Dkt. No. [23] at 9, 34, 39. While the dash camera footage would have certainly been helpful in evaluating the credibility of Sergeant Faulkner's testimony, there is simply no evidence supporting Defendant's contention that Sergeant Faulkner intentionally waited to initiate his dash camera so that he could manufacture a traffic violation to justify the stop. This Court has repeatedly found a traffic stop justified based on an officer's credible testimony alone, without supporting dash camera footage. See, e.g., United States v. Brounson, No. 1:15-CR-00366-ELR-JFK, 2016 WL 4472983, at *6-7 (N.D. Ga. May 23, 2016) (finding officer had probable cause to stop the

vehicle based on his observation, without supporting dash camera footage, of a vehicle following too closely to another), R&R adopted, 2016 WL 4472971 (N.D. Ga. Aug. 23, 2016); United States v. Whitlock, No. 4:08-CR-00044-RLV-WEJ, 2009 WL 10670976, at *5 (N.D. Ga. Apr. 22, 2009) (finding probable cause supporting a traffic stop based on officer's testimony where the dash camera footage did not depict the vehicles movements or the distance between the vehicles), R&R adopted, 2009 WL 10676345 (N.D. Ga. June 15, 2009), aff'd, 493 F. App'x 27 (11th Cir. 2012). Because the Court finds Sergeant Faulkner's testimony credible enough to establish Defendant's violation of O.C.G.A. § 40-6-49, it agrees with the Magistrate Judge's conclusion that the stop was supported by probable cause.

## B. Probable Cause for the Seizure of Defendant's Cell Phones

Defendant next argues that the Magistrate Judge's reliance on the plain view exception to justify the seizure of Defendant's cell phones was misguided. Dkt. No. [39] at 4. The plain view doctrine permits the warrantless seizure of an object when an officer is lawfully located in a place from which the object can be plainly viewed, the officer has a lawful right to access the object, and the object's incriminating character is immediately apparent. United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006). For an item's incriminating character to be immediately apparent, police must have probable cause to believe the object in plain view is contraband or evidence of a crime. Id. at 1290-91. Probable cause

does not require "an officer to know with absolute certainty that all elements of a putative crime have been completed when he seizes an article which reasonably appears to be incriminating evidence." United States v. Slocum, 708 F.2d 587, 605 (11th Cir. 1983) (citation omitted). Rather, he "may draw inferences based on his own experience in deciding whether probable cause exists." Ornelas v. United States, 517 U.S. 690, 700 (1996). Put simply, the probable cause inquiry should be made "with a common sense view to the realities of normal life." United States v. Herzbrun, 723 F.2d 773, 775 (11th Cir. 1984).

Defendant argues that officers did not have probable cause to seize his cell phones because the incriminating nature of the phones was not immediately apparent. Dkt. No. [36] at 4. Defendant contends a cell phone, which millions of people carry, is not incriminating on its face and that the incriminating character of the phones became apparent only when they were later searched. Id. This argument, however, fails to consider the totality of the circumstances that led officers to believe that the phones contained incriminating evidence.

Sergeant Faulkner testified that before seizing the phones, he obtained several pieces of information that gave him probable cause to believe that the phones contained incriminating evidence of motor vehicle theft. For example, he discovered that the vehicle Defendant was driving had a counterfeit VIN, that the actual VIN indicated that the vehicle had been reported stolen in 2023, and that Defendant gave inconsistent answers to basic questions about the vehicle. Dkt.

No. [23] at 12-20. After Defendant consented to a search of the vehicle, Sergeant Faulkner found bank cards in the names of other individuals and a notebook containing information such as the cost of titles and vehicle parts. Id. at 26-27. Sergeant Faulkner also found five cell phones, which he considered to be further evidence of criminal activity. Id. at 24, 26. He testified that based on his training and experience, criminal organizations use phones to communicate between one another when they buy and sell stolen vehicles. Id. at 26. Although it is not uncommon for a person to have one or two cell phones, Sergeant Faulkner testified that in his experience, possessing three or more cell phones while traveling in a stolen car is evidence of criminal activity. Id. at 26-27.

      While Defendant is correct that Sergeant Faulkner's mere observations of the cell phones, without more, would not have justified their seizure under the plain view doctrine, the totality of Sergeant Faulkner's observations, enhanced by his training and experience, did. See United States v. Lisbon, 835 F. Supp. 2d 1329, 1361-63 (N.D. Ga. 2011) (finding plain view doctrine justified seizure of cell phones that law enforcement reasonably believed the defendant was using to perpetrate drug crimes), aff'd sub nom., United States v. Moreno, 559 F. App'x 940 (11th Cir. 2014); United States v. Dulaney, No. 1:23-CR-0066-MHC-CCB-2, 2024 WL 3913495, at *4-5 (N.D. Ga. Aug. 23, 2024) (finding plain view doctrine justified seizure of cell phones that an ATF agent reasonably believed contained evidence of firearms trafficking). Accordingly, the Court agrees with the

11

Magistrate Judge's determination that Defendant's cell phones contained evidence related to the stolen vehicle he was driving and, thus, were lawfully seized under the plain view doctrine. Dkt. No. [36] at 19.

    **C.    Reasonableness of the Delay Between the Cell Phone Seizure and Warrant Application**

Lastly, Defendant argues that the 28-day delay between the seizure of his cell phones and the application for a warrant to search the phones violated the Fourth Amendment by unreasonably infringing his possessory interest. Dkt. No. [39] at 5-8. The Supreme Court has held that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" United States v. Jacobsen, 466 U.S. 109, 124 (1984). Thus, "even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant." United States v. Mitchell, 565 F.3d 1347, 1350 (11th Cir. 2009) (citation omitted).

In evaluating the reasonableness of a delay, a court must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." Illinois v. McArthur, 531 U.S. 326, 331 (2001); accord United States v. Place, 462 U.S. 696, 703 (1983) (instructing courts to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion"). The Eleventh Circuit has identified several factors that are

relevant to the timeliness inquiry: "the significance of the interference with the person's possessory interest"; "the duration of the delay"; "whether or not the person consented to the seizure"; "the government's legitimate interest in holding the property as evidence"; "whether the police diligently pursued their investigation"; "the nature and complexity of the investigation"; "whether overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case"; "the quality of the warrant application and the amount of time [the court] expect[s] such a warrant would take to prepare"; "and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant." United States v. Laist, 702 F.3d 608, 613-14 (11th Cir. 2012) (cleaned up). While relevant in determining the reasonableness of a delay, these factors "are by no means exhaustive[.]" Id. at 614. Rather, the ultimate determination comes down to the balance between "the privacy-related and law enforcement-related concerns[.]" McArthur, 531 U.S. at 331.

The Magistrate Judge concluded that law enforcement's delay in obtaining the search warrants weighed in the government's favor and was therefore reasonable. Dkt. No. [36] at 22. While holding Defendant's cell phones for 28 days without his consent interfered with his possessory interest, the Magistrate Judge found that his interest was diminished by the fact that Defendant never asked for them to be returned. Id. at 22 n.5. The Magistrate Judge also found the government's interest in the phones to be significant considering the likelihood

13

that they contained evidence of a crime and that the government's excuse for the delay—the limited resources for extracting cell phone data available in the sheriff's office and the backlog of other devices awaiting extraction—was reasonable. Id. at 24-26.

Defendant argues that his failure to ask for his phones back does not undermine his possessory interest because law enforcement made clear that they would not be returned. Dkt. No. [39] at 5-6. He also argues that the Magistrate Judge failed to address several of the factors in Laist in finding the delay reasonable. Id. at 6. Specifically, Defendant identifies three factors that he argues weigh in his favor: (1) that he was never given an opportunity to download information from the phones before they were seized; (2) that he never consented to the search or seizure of his phones; and (3) that he was not placed under arrest at the time of the seizure. Id. at 6-8.

The Court finds that even if the Magistrate Judge had considered these additional factors, the 28-day delay would still be reasonable. It is beyond dispute that Defendant had a heightened possessory interest in the phones and that the government significantly interfered with that interest by seizing the phones without his consent. See Riley v. California, 573 U.S. 373, 381 (2014) (emphasizing that the seizure of modern-day cell phones raises significant Fourth Amendment concerns due to the amount of personal and private information that are typically stored on phones); Mitchell, 565 F.3d at 1351 (explaining that

14

individuals have a significant possessory interest in computers given the extensive amounts of personal information they store). However, Defendant's possessory interest in the phones was diminished by the fact that he never asked for them back. See United States v. Johns, 469 U.S. 478, 487 (1985) (finding the defendant's failure to request the return of seized property undermined the argument that a delay adversely affected Fourth Amendment rights); United States v. Lawson, No. 24-10561, 2025 WL 1732735, at *10 (11th Cir. June 23, 2025) (same), cert. denied, No. 25-6057, 2025 WL 3620452 (U.S. Dec. 15, 2025); United States v. Quarles, No. 23-10377, 2025 WL 1430866, at *5 (11th Cir. May 19, 2025) (same). Although Defendant argues that any request for his phones would have been futile because the request would have been denied, whether the request would have been successful is beside the point. A request for the phones—regardless of whether the phones were ultimately returned—would have demonstrated a possessory interest. Because Defendant made no such request, his possessory interest was diminished.

Additionally, while Defendant's inability to access the contents of the phones and the fact that he refused consent to the seizure enhance his possessory interest, see Laist, 702 F.3d at 616, those factors do not tip the scales of reasonableness in his favor. Indeed, as the R&R explains, the government had a greater interest in holding the phones based on law enforcement's reasonable belief that the phones contained evidence of a crime. Dkt. No. [36] at 22-23. As

detailed above, Sergeant Faulkner discovered that the vehicle was stolen, that the VIN had been tampered with, that Defendant gave inconsistent answers to questions about the vehicle, that Defendant possessed a notebook containing information about car parts and title information, and that Defendant possessed several bank cards not in his name. Dkt. No. [23] at 12-20, 24, 26-27. This evidence provided a legitimate basis for believing that the phones contained evidence of a crime, which is why Sergeant Faulkner seized them with the intention of obtaining a search warrant for them. See id. at 27-28.

     Lastly, the fact that he was not arrested when the phones were seized does not diminish the government's interest in the contents of the phones. Defendant argues that officers would have arrested him if they believed that he was trafficking stolen vehicles and that their failure to do so undermines the government's evidentiary interest in the phones. Dkt. No. [39] at 7-8. However, this argument conflates the standard for seizing property without a warrant and the standard for making a warrantless arrest. The former requires probable cause to believe that the property is evidence of a crime, Smith, 459 F.3d at 1290, while the latter requires probable cause to believe that a person has committed or is committing a crime, Garcia v. Casey, 75 F.4th 1176, 1186 (11th Cir. 2023). Sergeant Faulkner seized Defendant's cell phones because he had probable cause to believe that they contained evidence of motor vehicle theft. However, because Sergeant Faulkner did not know the extent of Defendant's involvement in the

16

suspected theft, he did not arrest him during the traffic stop. See Dkt. No. [23] at 25. The government's interest in the phones did not depend on Defendant's involvement in the criminal activity officers believed the phones would contain. And because those interests outweighed Defendant's possessory interests in the phones, the 28-day delay was reasonable under the Fourth Amendment. McArthur, 531 U.S. at 331.

### III. CONCLUSION

For the reasons above, the Court **OVERRULES** Defendant's objections to the R&R. The Court has reviewed the remainder of the R&R for clear error and finds none. Accordingly, the Court **ADOPTS** the R&R, Dkt. No. [36], as the Order of the Court and **DENIES** Defendant's motion to suppress, Dkt. No. [15].

### IV. ORDER SETTING TRIAL

The Court hereby sets Defendant's trial to begin on **Monday, March 30, 2026, at 9:30 AM** in the 3rd floor courtroom of United States Courthouse, 18 Greenville Street, Newnan, Georgia 30263. The pretrial conference is set for **Wednesday, March 18, 2026, at 1:30 PM** in the 3rd floor Newnan courtroom. By noon on **Wednesday, March 4, 2026,** the parties are to file their respective motions in limine and voir dire questions. By noon on **Wednesday, March 4, 2026,** the Government is to file a brief statement of facts the parties can rely on for voir dire. By noon on **Wednesday, March 11, 2026**, the parties are to file any objections to those items listed above. Requests

to charge and verdict forms should be filed on CM/ECF and emailed to the Courtroom Deputy Clerk in Word format by noon on **Friday, March 27, 2026.** The time from **January 29, 2026,** to **March 30, 2026,** shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The Court requires the parties to email an exhibit and witness list to the Courtroom Deputy Clerk by **Friday, March 27, 2026**. The list shall contain an identifying description of each exhibit to the right of the exhibit numbers. The list shall be double spaced with approximately 1.5 inches of space to the left of the number for court use. The parties are also required to deliver to chambers the morning of trial a tabbed exhibit notebook for the Court's use. Counsel shall comply with the Local Rules of this Court regarding exhibits. Any exhibit larger than 8 ½" x 11" will be returned to counsel pursuant to Rule 79.1(B)(5) of the Local Rules of this Court. Within 10 days following the conclusion of a trial or hearing, all parties must file photographs or other appropriate reproductions of oversized and non-documentary exhibits admitted as evidence at the trial or hearing. The parties must provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

The courtroom is technology equipped. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs

at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed prior to the pretrial conference, to allow time for proper notification to the U.S. Marshals Service.

It is the responsibility of counsel to immediately notify the Courtroom Deputy if the defendant requires interpretive services for any court proceeding so that services can be arranged. It is the responsibility of counsel to arrange interpretive services for any witnesses needing assistance of an interpreter for any court proceeding.

**IT IS SO ORDERED** this 29th day of January, 2026.

_____
**Leigh Martin May**
**Chief United States District Judge**